Cowen, J.
dissenting. A majority of the court being m favor of the defendant below on a ground fatal to the prosecution, it becomes unnecessary to examine the question whether the evidence of reputation resorted to at the trial was properly admitted. The authorities are conflicting, and so far as this point is concerned I certainly feel no other sentiment than that of satisfaction in being relieved from the duty of examining their force.
It is, I confess, with a sentiment somewhat different that I find the offence imputed by this indictment, highly immoral as it is, about to be pronounced intangible by legal punishment. If any one of the attributes of the common law may be said to stand above the rest in point of excellence, its well known power of pursuing iniquity through all disguises, of stripping from crime the forms under which it seeks to mask itself, and dragging the offender from the' darkest recesses of fraudulent evasion, has *563 seemed to me to occupy that position. This power I do not understand to be denied; and the only enquiry is, whether it exist in sufficient force to reach the defendant below.
That the act of keeping a bawdy house is a” misdemeanor, is not and cannot be controverted ; nor is it pretended to be one of that venial character, which calls for the least leniency in the application of the rules by which offences of ' a similar grade are defined. The indictment charges and the jury have found, that the accused demised his house in Albany for the purpose of its being used as a bawdy house, and that it was thus used. The evidence is entirely clear that these things were so in truth, though the parties sought to obscure their purpose by throwing the transaction into the form óf a sale to be executed at a remote period, the consideration money being made payable in small instalments at short intervals as the tenant might acquire means from her guilty and disgusting occupation. The contract was- legally null; and on the facts disclosed the defendant might at any time have ousted the tenant by ejectment. In short, the defendant was the principal mover—the regular participant in the profits of a criminal nuisance under his direct control; for he would not have been liable in trespass had he even entered personally without suit, and put an end to the tenant’s possession.
It is an elementary principle, that all executory contracts intended as subsidiary to the purposes of public or even private prostitution, are void. Now I need only the application of another principle, equally well established and familiar, to satisfy my mind that the defendant should be held guilty of having established and continued the nuisance in question; and it is this, that every one who aids or merely advises the commission of a trespass or misdemeanor, becomes a principal offender and indictable as such, if the offence be subsequently committed. The only fault I have to find with the indictment here is that, instead of directly pursuing this principle, it resorts to the supposition of a lease as the link by which the defen *564 dant became connected with the crime. The indictment would have been better in form, and I think equally in correspondence with the proof, had it charged the defendant at once with keeping a bawdy house. It is not the habit of the-law to mouth matters in cases like the present; but to speak of their legal effect directly and plainly. According to my recollection, the common law has uniformly treated the man who advises, supplies the means and reaps the profits of a misdemeanor, as a direct offender. One counsels another to commit an assault and battery and furnishes him with the weapon by which the offence is perpetrated ^ the former is indictable as if he were present and personally struck the blow. If he procure the like offence to be committed by demising his farm, would not the legal consequences be the same? Suppose a tenant actually covenants with the landlord to keep a bawdy house in consideration of a lease, no one, it seems to me, could doubt the landlord’s guilt on the principles I have mentioned; and yet the case at bar is really the same as the one supposed. The covenant mentioned would have no more bound the lessee, than the oral understanding which was here shown to exist. Both would be equally void as contracts, and in either case the action of the parties by way of carrying on the nuisance and paying and receiving its profits, would be entirely voluntary. We should hold them void as contracts for the very reason that they would be valid as evidences of crime.
It may be said—indeed, it is always said in cases of this kind-—that men may sell or demise their property for what price or rent they please. No one will deny this, when taken with the proper qualification, viz: that they shall not couple with such a transaction .any criminal stipulations or understanding. Men must act in good faith, and with due reference to the interests of others. Sic vtere tua ut alienum non laidas. It is true, there is nothing on the face of the paper under which the nuisance in question was established evincing any illegal purpose. But I must, with deference, protest against imputing to the common *565 law such helpless imbecility as an argument founded upon this circumstance necessarily implies. A man can no more escape the truth, by calling his agreement to have a bawdy house kept or other crime committed, a lease or a deed—even though he give it the appearance of the one or the other by way of coloring over the transaction—than he can neutralize the effect of poison by calling it an antidote. It is a fraud upon the criminal law; and as impotent for the purposes of disguise or defence, as are the cabalistic words or phrases adopted by a community of burglars. The universal rule in regard to fraud, usury and crime is, that whatever specious or delusive appearance parties may give their contracts or other instruments intended as the means of mischief, the law will assign them their true character and call them by their right names.
The very point now in controversy before us, has been adjudged against the defendant below by the supreme court of Massachusetts; (Commonwealth v. Harrington, 3 Pick. Rep. 26;) and it seems to me the adjudication is well sustained by obvious principles. I am opposed to a new trial on the merits, upon the ground, that where a man demises or lets out his premises to be used for the purpose of establishing and continuing a nuisance, and this is done, though by his tenant, he is himself, in contemplation of the common law, guilty of the nuisance equally with his tenant. (See Rosewell v. Prior, 2 Salk. 460; Bush v. Steinman, 1 Bos. Sp Pull. 409.)
Judgment reversed